**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMIR ASGARI, *Plaintiff*, v. MATTHEW PALMER, *et al.*, *Defendants.* | No. 25-cv-01292 (DLF) |

**<u>MEMORANDUM OPINION</u>**

Amir Asgari brings this action under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, to compel a final decision on his family's visa applications.  Before the Court is the defendants' motion to dismiss.  *See* Dkt. 6.  For the reasons that follow, the Court will grant the motion.

## I.   BACKGROUND

Asgari is a U.K. citizen who seeks to acquire permanent U.S. residency through the Immigrant Investor Program.  Compl. ¶¶ 17, 20, Dkt. 1.  That program—also referred to as the "EB-5 program"—permits foreign investors to gain permanent residency through certain qualifying investments in the United States.  *Id.* ¶ 1.  In November 2019, Asgari filed an I-526 Immigrant Petition by Alien Entrepreneur with the U.S. Citizenship and Immigration Services, listing his wife and two children as derivative beneficiaries.  *Id.* ¶¶ 2, 22.  His petition was approved later that month.  *Id.* ¶ 23.  Asgari and his family subsequently submitted DS-260 immigrant visa applications and accompanying documentation, *id.* ¶ 24, and their applications were deemed "Documentarily Qualified" in June 2024, *id.* ¶ 25.  On September 9, 2024, Asgari

and his family completed an interview with a consular officer at the U.S. Embassy in the United Kingdom.  *Id.* ¶ 26.

Following the interview, Asgari received a notice informing him that his family's applications had been "refused" under Section 221(g) of the Immigration and Nationality Act (INA) pending "[a]dditional administrative processing" and "[s]ubmission of additional evidence."  Compl., Ex. A, Dkt. 1-1; *see* Compl. ¶ 27.  Asgari provided the additional information by completing and submitting Form DS-5535 Supplemental Questions for Visa Applicants. Compl. ¶ 27.

In the months that followed, Asgari repeatedly reached out to the U.S. Embassy to inquire about the status of his family's applications.  *Id.* ¶ 28.  In response to one of Asgari's inquiries, an embassy representative wrote:  "Thank you for your email, your application is subject to additional administrative processing, which is mandatory and cannot be waived.  As processing varies with each individual application there is no set period that it takes."  *Id.* (emphasis omitted).  In December 2024, Asgari asked the Office of Congressman Jerrold Nadler to follow up on his case. *Id.* ¶ 30.  The Congressman's staff received the following response:

> Embassy records show that Mr. Asgari's case was refused under Section 221(g) of the Immigration and Nationality Act pending necessary administrative processing. As of today (January 15, 2025), we can confirm that the necessary administrative processing in his case currently remains underway.  Please note, we are not able to provide a specific timeline for the completion of the administrative processing as it varies in every case.  Therefore, we cannot predict the exact length of time that the administrative processing may take.  At this time, no additional information or documentation is requested or required from Mr. Asgari.

*Id.*

Asgari represents that he has not received any "meaningful updates" regarding the status of his family's visa applications since 2024.  *Id.* ¶ 32.  He alleges that the defendants' failure to

adjudicate those applications has caused his family both monetary and emotional harm. *See id.* ¶¶ 6–10, 33.

On April 28, 2025, Asgari filed this action against the Chargé d'Affaires, a.i., U.S. Embassy in the United Kingdom, and the U.S. Secretary of State. Seeking relief under both the Administrative Procedure Act (APA), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, he asks this Court to order the defendants to "issue a final adjudication" on his family's visa applications, Compl. ¶ 70; *see id.* ¶¶ 36–68. The defendants have moved to dismiss the complaint for lack of jurisdiction and failure to state a claim. *See* Mot. to Dismiss 1, Dkt. 6.

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing jurisdiction falls upon the party invoking it. *Id.*; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation modified). A court may also "undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (citation modified). If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(6), in turn, allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and a court must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (per curiam) (citation modified). A court need not, however, accept "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts alleged in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation modified).

When considering a Rule 12(b)(6) motion, a court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.    ANALYSIS

Asgari seeks to compel the defendants to adjudicate his family's visa applications under both the Mandamus Act and § 706(1) of the APA. *See* Compl. ¶¶ 36–68.

The threshold requirements for these claims are functionally the same. A party seeking mandamus relief "must first establish that the agency has violated a crystal-clear legal duty." *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (citation modified). Similarly,

a party pursuing a § 706 failure-to-act claim must "identify a legally required, discrete act that the [agency] has failed to perform." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009).[1]

Asgari argues that four separate sources of law obligate the defendants to further adjudicate his family's visa applications. None is sufficient to support his APA or mandamus claim.

First, Asgari notes that § 555(b) of the APA obligates an agency "to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b); *see* Compl. ¶¶ 43, 64. But recently in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), the D.C. Circuit held that § 555(b) does not "plac[e] a clear, non-discretionary duty" on a consular officer to "re-adjudicate [an] already-refused application." *Id.* at *3 (citation modified). There, as here, a visa applicant sought APA and mandamus relief, arguing that a consular officer breached her duty to make a final decision within a reasonable time when the officer reviewed the plaintiff's visa application, interviewed the plaintiff, refused the plaintiff's application, and placed the application in administrative processing. *Id.* at *2. The D.C. Circuit held that this course of action did not violate the agency's duty to "'conclude a matter' within a 'reasonable time.'" *Id.* at *3 (quoting 5 U.S.C. § 555(b)). "[A]t *most*," the court explained, § 555(b) "entitled [the plaintiff] to the official refusal decision she already received"—it "d[id] not in any way dictate how the agency c[ould] handle her rejected paperwork after [that] decision ha[d] been made." *Id.* at *4. As such, § 555(b) was not an "adequate legal basis" under which the plaintiff could "obtain the exceptional and rare

---

[1] These claims do, however, differ in one key respect. If a party seeking mandamus relief fails to adequately allege that the agency has violated a clear legal duty, the Court lacks subject matter jurisdiction over the mandamus claim. *See Illinois v. Ferriero*, 60 F.4th 704, 713–14 (D.C. Cir. 2023). But if a party seeking § 706 relief fails to identify a legally required, discrete action that the agency failed to perform, the party has failed to state a claim for unreasonable delay. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).

relief of an order compelling the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application." *Id.* at *6.

Although *Karimova* was unpublished, this Court and other district courts have applied its reasoning as persuasive. *See, e.g.*, *Baradaran v. Rubio*, No. 24-cv-02946, 2025 WL 2506546, at *2 & n.3 (D.D.C. Sept. 2, 2025) ("Although the Court does not view *Karimova* as binding, . . . its reasoning is persuasive and applies here."); *Doroodchi v. Rubio*, No. 24-cv-03170, 2025 WL 1865114, at *4 (D.D.C. July 7, 2025) (applying *Karimova* as "the considered and unanimous judgment of a D.C. Circuit panel"); *Moradi v. Rubio*, No. 24-cv-02902, 2025 WL 1865110, at *6 (D.D.C. July 7, 2025) (accepting *Karimova*'s persuasive value because it was "entered following oral argument and includes a rather lengthy exegesis of its legal reasoning"); *Al-Kawaz v. U.S. Dep't of State*, No. 24-cv-01792, 2025 WL 1768103, at *4 (D.D.C. June 26, 2025) ("The Court is persuaded by *Karimova*."). *But see, e.g.*, *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 n.4 (D.D.C. 2024) ("This Court has considered *Karimova* but declines to follow it."). Applying *Karimova* here, the Court concludes that the defendants did not violate a clear and direct legal duty under § 555(b) of the APA.

Next, Asgari points to a provision of the INA that provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b); *see* Compl. ¶¶ 39, 63. That provision, too, falls short. Even assuming that § 1202(b) imposes an affirmative duty to adjudicate, rather than identifies who must perform adjudications, *but see, e.g.*, *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 15 (D.D.C. 2022), Asgari cannot dispute that a consular officer "reviewed and adjudicated" his family's visa applications, 8 U.S.C. § 1202(b); *see* Compl. ¶¶ 27–31; Pl.'s Opp'n 10, Dkt. 7 ("Following the interview, the family were informed that the consular officer had 'refused' their application pursuant to INA § 221(g), which places an

6

application into administrative processing status."). Section 1202(b), like § 555(b), does not speak to the consular officer's ability to subsequently place those applications in adjudicative processing. *See Karimova*, 2024 WL 3517852, at *4.

Asgari also relies on 8 U.S.C. § 1571(b), which describes "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after" initially filed. *See* Compl. ¶ 47. But the D.C. Circuit has held that the "aspirational statement" embodied in § 1571(b) "is insufficient to set a deadline." *Da Costa*, 80 F.4th at 344. And, in any event, statutory provisions that describe the "sense of Congress" do not create legal duties. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) ("[T]he prefatory 'sense of Congress' language in § 1571(b) is best interpreted as nonbinding.").

Finally, Asgari argues that the defendants failed to adhere to a Department of State regulation that provides that, "[w]hen a visa application has been properly completed and executed before a consular officer," the officer "must" issue the visa, refuse the visa, or discontinue granting the visa. 22 C.F.R. § 42.81(a); *see* Compl. ¶¶ 40–42. The defendants, however, fulfilled this duty when the consular officer refused Asgari's family's visa applications. *See* Compl. ¶¶ 27–31; Pl.'s Opp'n 15. At that time, Asgari received the very decision mandated by the regulation on which he relies. *Cf. Karimova*, 2024 WL 3517852, at *4.

At bottom, Asgari disputes that the consular officer's decision on his family's visa applications was final. *See* Pl.'s Opp'n 17 ("Although true that the consular officer in this case issued a preliminary 'denial,' such a denial did not end the process, as the application is still under consideration."); *see also id.* at 6, 14–20. But the statutes and regulations he identifies entitled Asgari and his family only to a decision on their applications. "Nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application[s] in case

7

circumstances later change in the applicant[s'] favor, thereby saving the applicant[s] the time and cost of filing a whole new visa application." *Karimova*, 2024 WL 3517852, at *4; *see Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 102 (D.D.C. 2024) ("Once a consular officer either issues or refuses a visa, and provides a legal basis for doing so, nothing in the INA or its regulations require consular officers to do anything more.").

Because Asgari does not point to a clear legal duty that the defendants failed to fulfill after refusing his family's visa applications and placing them in administrative processing, *see In re Ctr. for Biological Diversity*, 53 F.4th at 670; *Montanans for Multiple Use*, 568 F.3d at 227, the Court lacks subject matter jurisdiction to issue mandamus relief, and Asgari fails to state a claim for unreasonable delay under the APA, *see Illinois*, 60 F.4th at 713–14; *Da Costa*, 80 F.4th at 340.[2]

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss, Dkt. 6, is granted. The plaintiff's Mandamus Act claim is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1), and the plaintiff's Administrative Procedure Act claim is dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 25, 2026

---

[2] As the Court agrees that Asgari has not identified a clear non-discretionary duty that the defendants must fulfill for an already-refused visa application, it need not address the defendants' alternative argument that his claims should be dismissed under the consular non-reviewability doctrine. *See* Mot. to Dismiss 8–12.